IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS
TOPEKA DIVISION

IN RE:                                          )
                                                )
RILEY DRIVE ENTERTAINMENT                       )   Case No: 19-41328
XV, INC.                                        )   Chapter 11
                                                )
            Debtor.                             )

## STATEMENT OF OPERATING BUDGET OR, IN THE ALTERNATIVE, MOTION FOR AUTHORIZATION TO PAY OPERATING EXPENSES

COMES NOW Debtor Riley Drive Entertainment XV, Inc., by and through undersigned counsel, and for its Statement of Operating Budget or, in the alternative, Motion for Authorization to Pay Operating Expenses, states as follows:

### Background

1. On October 29, 2019 Debtor initiated this bankruptcy case by filing its Voluntary Petition under Chapter 11 of the United States Bankruptcy Code. Debtor remains in possession of its property and in control of its affairs pursuant to 11 U.S.C. §§1107 and 1108.

2. Debtor's business consists of ownership and operation of a restaurant and sports bar called Saints Pub + Patio in Lenexa, Kansas (the "Business"). All or virtually all of the cash flow of the Business derives from food and beverage purchases by the customers (the "Revenues").

### Jurisdiction

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409. The subject matter of this Motion and the relief herein requested arise under 11 U.S.C. §363(c) and Federal Rule of Bankruptcy Procedure 4001(b).

6620761

## Operating Budget

4.  It is vital that Debtor continue to operate the Business in the ordinary course in order to maintain its normal business operations and assure vendors and suppliers that business operations will continue as usual without disruption. Debtor cannot maintain operations without the immediate use of the Revenues for operating expenses. Failure to timely pay Debtor's post-petition operating expenses will likely cause a shutdown of Debtor's business operations, creating severe hardship on all parties doing business with Debtor and irreparable injury to Debtor, its creditors, the customers and the bankruptcy estate.

5.  Accordingly, Debtor submits the attached budget reflecting the ongoing monthly expenses for proper operation and maintenance of the Business (the "Budget"). This four-month Budget is consistent with the ordinary and expected costs of business operations. In order to insure smooth and efficient operation of the Business, Debtor intends to pay all expenses reflected in the Budget in amounts not exceeding 10% more than the figures set out in the Budget.

6.  Pursuant to 11 U.S.C. § 363 (c)(1) Debtor is entitled to use property of the estate in the ordinary course of business without notice or a hearing. As the Budget is comprised of the ordinary course expenses of the Business, Debtor is authorized to utilize the Revenues to pay those operating costs.

7.  Persuasive authority provides that the Revenues are not subject to any lien or encumbrance of lenders. In rejecting the lien claim of a lender against restaurant revenues, a Kentucky bankruptcy court declared:

> Rather, the meritorious fact we should note is that the restaurant industry, in general, is a service-oriented industry. In comparison with food wholesalers and retailers who sell food products in their natural or packaged state, restaurants expend a great deal of time and energy preparing individual food orders by

transforming these natural or packaged foods into menu items. As in any business, the cost of preparing such foods for human consumption is without a doubt passed on to the consumer.

For the above stated reasons, we find that the restaurants involved in this case were primarily engaged in the selling of services and therefore, any revenues generated from the operation of the businesses were not from the sale of inventory.

Accordingly, it is our opinion that the cash deposits on hand do not constitute proceeds from the sale of inventory and therefore, Sovran does not have a validly perfected security interest in the cash deposits.

*In re: Inman*, 95 B.R. 479, 480-81 (Bkrtcy. W.D. Ky 1988). Accordingly, this Court should confirm Debtor's authority under § 363 (c)(1) to pay the operating expenses of the Business.

## **Authorization for Use of Revenues**

8. In the event that the Court determines some absence of statutory authorization under § 363(c)(1) for Debtor's use of the Revenues as proposed, Debtor requests the Court to authorize the use of the Revenues as provided in the Budget for the continued operation and maintenance of the Business in the ordinary course.

9. The Tenth Circuit has articulated a flexible approach on the use of cash collateral with the goal of promoting the ultimate aim of Chapter 11, i.e., reorganization of a debtor's business and preservation of its value for the benefit of creditors. *In re O'Connor*, 808 F.2d 1393 (10th Cir. 1987), states in pertinent part:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtors' efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

*Id.* at 1397-98.

3

10. Debtor's use of the Revenues in accordance with the Budget is appropriate notwithstanding any objection of any lender (or any other party) inasmuch as there is no lack of adequate protection for any such creditor. Any holder of a valid cash collateral claim will not be impaired by Debtor's proposed use of the rental income. As one Massachusetts bankruptcy court observed,

> ...resolution of the question of adequate protection should focus on the mortgagee's entire property interest, not just his interest in rents. Cash collateral rights in rents are similar to cash collateral rights in proceeds of receivables, particularly where the security interest also encompasses all of a debtor's operating assets. Under such a security arrangement, the creditor is considered to have adequate protection so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest. In these circumstances, net operating income, which is comparable to net rental revenues, remains stable, so that the secured claim is not declining in value. Permitting the secured party to collect that income draws the life blood from the collateral.

*In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bkrtcy. D. Mass. 1990). See also *In Re Mullen*, 172 B.R. 473, 476 (Bkrtcy. D. Mass 1994) ("the value of the creditor's interest in property must be declining if the creditor is to be lacking adequate protection, and the courts have so held."). All proposed expenditures are to be used in the operation of Debtor's business in its ordinary and normal course and in administration of the Chapter 11 proceeding. Use of the Revenues as proposed by Debtor for the operation and maintenance of the Business will preserve its value and protect all parties-in-interest. See *Federal Nat. Mortg. V. Dacon Bolinbrook Assoc.*, 153 B.R. 204, 214 (N.D. Ill. 1993) ("the required adequate protection of Rents is satisfied to the extent the Debtor reinvests the Rents in the operation and maintenance of the property because the value of the secured creditor's interest in its collateral will thereby be increased"). Debtor submits that any secured creditor's interest in cash collateral will be adequately protected by the Debtor's intended use of the Revenues since the proposed expenditures specifically

4

involve the continuing operation of the Business, thereby generating ongoing cash flow.[1] See *In Re 5028 Wisconsin Ave. Associates Ltd.*, 167 B.R. 699, 706 (Bkrtcy. D. Dist. Col. 1994) ("Usually, adequate protection can be accorded the mortgagee by devoting the rents to necessary costs of operating and preserving the building so as to continue generating rents")[2]; *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289, 301-02 (Bkrtcy. D. Mass. 1988)("To the extent that the debtor applies rental income to the operation and maintenance of the property..., the mortgagee may be considered to be adequately protected.); *In re Donato*, 170 B.R. 247, 256 (Bkrtcy. D.N.J. 1994) ("The use of cash collateral to pay the operating expenses of the real property in question adequately protects the interest of secured lenders, however, even where the creditor is undersecured").

11. This Court has previously held that a creditor's "security interest in the real property and rents is adequately protected by its extension to future rents..." *In re Barkley 3A Investors, Ltd.*, 175 B.R. 755, 761 (Bkrtcy. D. Kan. 1994). Debtor submits that any valid and perfected security interest in the Revenues is adequately protected by the extension of such security interest in the post-petition Revenues generated by Debtor's operation and maintenance of the Business in accordance with the Budget.

---

[1] "Therefore, as long as the debtor generates a continuous income stream, the debtor's use of the rental income does not diminish the value of the collateral." *In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bkrtcy. M.D. Fla. 1997).

[2] The court in *5028 Wisconsin Ave. Associates* also observed that a debtor's use of rental income can be granted under §552(b): "The debtor's use may alternatively be authorized under 11 U.S.C. §552(b) by limiting the mortgagee's security interest based on the equities of the case to rents net of operating and maintenance expenses." *Id.* The foregoing conclusion resonates with the observation of an Ohio bankruptcy court which noted that usage of rental income to maintain the encumbered property is fully consistent with the expectation of the parties: "Usage of the gross rents to maintain the property was always contemplated by the parties and is a form of adequate protection to preserve the value of the property in which Freddie Mac has a security interest." *In re Rollingwood Apartments, Ltd.*, 133 B.R. 906, 913 (Bkrtcy. S.D. Ohio 1991).

WHEREFORE, Debtor requests the Court to enter its Order approving the Budget and ratifying Debtor's statutory authorization to use property of the estate as provided in 11 U.S.C. § 363(c)(1) by virtue of the absence of any liens against its revenues or, in the alternative, authorize the use of the revenues as requested above, and grant such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

**MCDOWELL RICE SMITH & BUCHANAN**

/s/Jonathan A. Margolies
Jonathan A. Margolies   MO #30770
605 W. 47th Street, Suite 350   KS Fed #70693
Kansas City, Missouri 64112
Telephone: (816) 753-5400
Facsimile: (816) 753-9996
email: jmargolies@mcdowellrice.com
**ATTORNEYS FOR DEBTOR**

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th of October, 2019, a copy the foregoing was served via U.S. First Class mail, postage prepaid, to all identified interested parties as follows:

Office of the United States Trustee
401 N. Market,
Wichita, KS 67202

OakStar Bank
1020 E. Battlefield
Springfield, Missouri 65807

Landmark National Bank
8101 W. 135th Street
Overland Park, Kansas 66223

ASCAP
P.O. Box 311608
Nashville TN 37203

CCL 2, LLC
1100 Walnut
Suite 2000
Kansas City MO 64106

Fox Capital Group, Inc.
65 Broadway
Suite 804
New York NY 10006

Itria Ventures, LLC
462 Seventh Avenue, 20th Floor
New York NY 10018

Revenue Systems, Inc.
P.O. Box 15257
Clearwater FL 33766

Simply Funding, LLC
45 Broadway, Suite 2450
New York NY 10006

Small Business Financial Solutions
4500 East West Hwy
6th Floor
Bethesda MD 20814

US Foods, Inc.
16805 College Blvd
Lenexa KS 66219

/s/ *Jonathan A. Margolies*
Attorney for Debtor

7

# Riley Drive Entertainment XV, Inc. dba Saints Lenexa
## Operating Budget

| Revenue Sources | | Nov-19 | Dec-19 | Jan-20 | Feb-20 |
|---|---|---|---|---|---|
| Food & Beverage Sales | | 248,750 | 242,000 | 237,000 | 243,500 |
| Total Revenues | | 248,750 | 242,000 | 237,000 | 243,500 |
| | | | | | |
| Advertising/Promotions | | 1,000 | 1,000 | 1,000 | 1,000 |
| Bank Charges | | 500 | 500 | 500 | 500 |
| Chemicals/Cleaning Supplies | | 270 | 270 | 270 | 270 |
| Cleaning | | 2,500 | 2,500 | 2,500 | 2,500 |
| DirecTV/Cable | | 1,500 | 1,500 | 1,500 | 1,500 |
| Entertainment | | 500 | 500 | 500 | 500 |
| Equipment Rental | | 211 | 211 | 211 | 211 |
| Food & Beverage Costs | 35% | 87,063 | 84,700 | 82,950 | 85,225 |
| Food Delivery Services | | 4,000 | 4,000 | 4,000 | 4,000 |
| Insurance | | 2,800 | 2,800 | 2,800 | 2,800 |
| Internet/Phone | | 397 | 397 | 397 | 397 |
| Laundry and Dry Cleaning | | 575 | 575 | 575 | 575 |
| Management Fee | 5% | 12,438 | 12,100 | 11,850 | 12,175 |
| Music Licensing Fees | | 100 | 100 | 100 | 100 |
| Office Supplies/Postage | | 300 | 300 | 300 | 300 |
| Payroll and PR Taxes | 35% | 87,063 | 84,700 | 82,950 | 85,225 |
| Pest Control | | 100 | 100 | 100 | 100 |
| Rent | | 16,500 | 16,500 | 16,500 | 16,500 |
| Repairs and Maintenance | | 1,000 | 1,000 | 1,000 | 1,000 |
| Replacement Reserve | | 2,500 | 2,500 | 2,500 | 2,500 |
| Restaurant Supplies | | 2,000 | 2,000 | 2,000 | 2,000 |
| Trash | | 2,000 | 2,000 | 2,000 | 2,000 |
| Uniforms | | 350 | 350 | 350 | 350 |
| Utilites | | 5,517 | 5,269 | 4,499 | 4,094 |
| Total Expenses | | 231,183 | 225,872 | 221,352 | 225,822 |
| | | | | | |
| Net Revenue | | 17,568 | 16,128 | 15,648 | 17,678 |